# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Signature Management Team, LLC,

|  |  |
|---|---|
| | Case No. 13-cv-14005 |
| Plaintiff, | Hon. Judith E. Levy |
| | Mag. Judge David R. Grand |

v.

John Doe,

Defendant.

_____/

## OPINION AND ORDER DENYING PLAINTIFF'S [10] MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

This is a copyright infringement case. Plaintiff Signature Management Team ("Team") alleges defendant John Doe infringed Team's registered copyright in a book by posting a PDF version of the book on the internet. Before the Court is Team's Motion for Partial Judgment on the Pleadings (Dkt. 10). In an earlier proceeding before a Magistrate Judge in the Northern District of California, Doe unsuccessfully sought to quash a subpoena TEAM issued to Doe's internet host, Automattic, pursuant to the Digital Millennium Copyright Act ("DMCA"). In this motion, Team argues *res judicata* or,

alternatively, collateral estoppel, bars Doe from claiming he has a First Amendment right not to disclose his identity to Team.

The Court heard oral argument on January 31, 2015. For the reasons set forth below, the Court will deny the motion.

## I.    Background

Team is a multi-level marketing ("MLM") company that sells motivational materials teaching people how to make money in MLM businesses. Doe blogs under the pseudonym "Amthrax." His blog is critical of MLM businesses in general and of Team specifically. Doe's blog is hosted by a company called Automattic.

This action involves a book titled "The Team Builder's Textbook" [hereinafter "the Work"]. The Work was authored by Orrin Woodward, the leader of Team, and Christopher Brady. It was first published in 2006, and is now in its 9th edition. At issue here is the 4th edition, published in 2009.

The timeline of relevant events is as follows:

**January 18, 2013**:   Doe posted a hyperlink to a portable document format (pdf) version of the complete 4th edition of the Work.  Doe had found the pdf on the website of a company named Technovate Translations.

**February 8, 2013**: Woodward and Brady assigned Team the copyright to the Work for $1.00.  (Dkt. 13-4, Ex. 9 to Def.'s Resp.)  On the same day, Team sent a take-down notice to Automattic, demanding that it remove the copy of the Work from the Amthrax Blog.  (Dkt. 10-2, Ex. 1 to Pl.'s Mot.)  Also on the same day, Team issued a subpoena to Automattic, seeking Doe's identity and address.  (Dkt. 10-3, Ex. 2 to Pl.'s Mot.)  The subpoena was issued pursuant to the DMCA, 17 U.S.C. § 512(h).   The subpoena required Automattic to produce the information by February 15, 2013.

**February 11, 2013**: Team registered its copyright in the Work.  (Dkt. 1-1, Ex. A to Compl.)

**February 12, 2013**: Team faxed a copy of the subpoena to Automattic, claiming the subpoena had been served the day before.

**February 15, 2013**: Team's counsel sent a letter to the CEO of Automattic, threatening to seek contempt sanctions for Automattic's failure to identify Doe by the 15th.

**February 16, 2013**: Automattic sent a copy of the subpoena to Doe.

**February 19, 2013**: Doe removed the hyperlink to the pdf of the Work. Doe substituted a hyperlink to the pdf copy on the Technovate Translations website.

**February 22, 2013**: Doe removed the hyperlink to the pdf on the Technovate site.

**February 25, 2013**: Automattic's counsel filed objections to the subpoena. (Dkt. 10-4, Ex. 3 to Pl.'s Mot.)

**February 26, 2013**: Doe's counsel asked to participate in a meet and confer between Team's and Automattic's counsel. Doe's

counsel further proposed accepting service on Doe's behalf in a copyright action filed by Team, and addressing the issue of disclosing Doe's identity in that proceeding.   Team's counsel rejected Doe's proposals.

**March 8, 2013**: Doe filed a motion to quash the subpoena, based on his right to remain anonymous under the First Amendment. (Dkt. 10-5, Ex. 4 to Pl.'s Mot.)

**April 22, 2013**: Magistrate Judge Spero denied the motion to quash. *Signature Management Team, LLC v. Automattic, Inc.*, 941 F. Supp. 2d 1145 (N.D. Cal. 2013) (Dkt. 10-7, Ex. 6 to Pl.'s Mot.)   Automattic later provided Team with all information Automattic claimed to have regarding Doe's identity.   The information proved insufficient to identify Doe.

**Sept. 19, 2013**: Team filed this action for copyright infringement.

## II.   Analysis

Team claims entitlement to "partial judgment on John Doe's defense that the First Amendment bars the discovery of his identity." (Dkt. 10, Pl.'s Mot. 1, Pl.'s Br. 2.)   Team cites two grounds in support:

the *res judicata* effect of the Magistrate Judge's April 22, 2013 order denying Doe's motion to quash, and, alternatively, the collateral estoppel effect of that order.

Doe responds that neither *res judicata* nor collateral estoppel applies here.  Doe additionally argues that the issue of whether he must disclose his identity is a discovery issue not properly resolved on a 12(c) motion.  (Dkt. 13, Def.'s Br. 8-11.)   Team replies that because "Doe raised the [First Amendment anonymity] issue in his Answer and Affirmative Defenses," then "[t]he invalidity of that defense . . . is properly established at this juncture by a partial judgment on the pleadings." (Dkt. 14, Pl.'s Reply 3.)

## A.    Standard of review

A motion for judgment on the pleadings under Rule 12(c) "is designed to provide a means of disposing of cases when the material facts are not in dispute between the parties and a judgment on the merits can be achieved" based on the pleadings, matters incorporated in or central to the pleadings, and judicially-noticed facts.  5C Wright & Miller, <u>Federal Practice & Procedure</u> § 1367, at 206-07 (3d ed. 2004);

*accord Alexander v. City of Chicago*, 994 F2d 333, 336 (7th Cir. 1993) (noting "customary application" of Rule 12(c) is "to attempt to dispose of the case on the basis of the underlying substantive merits"); *Hebert Abstract Co., Inc. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (citing 2d edition of Wright & Miller).

In deciding a 12(c) motion, the court "accept[s] all well-pleaded allegations of the opposing party as true, and the motion may be granted only if no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Henry v. Chesapeake Appalachia, L.L.C.*, 739 F.3d 909, 912 (6th Cir. 2014). Partial judgment on the pleadings is treated similarly to a motion for partial summary judgment. *See Chi-Mil Corp. v. W.T. Grant Co.*, 70 F.R.D. 352, 357-58 (E.D. Wisc. 1976); 5C Wright & Miller, <u>Federal Practice & Procedure</u> § 1369 at 264.

## B.  Team's motion is properly construed as a motion to strike under Rule 12(f)

Team seeks judgment on Doe's defense that the First Amendment bars discovery of his identity. Team contends Doe's First Amendment defense is invalid.

7

The proper vehicle for invalidating a defense is a motion to strike pursuant to Rule 12(f).   5C Wright & Miller, <u>Federal Practice & Procedure</u> § 1369 at 260 ("If a plaintiff seeks to dispute the legal sufficiency of fewer than all of the defenses raised in the defendant's pleading, he should proceed under Rule 12(f) rather than under Rule 12(c) because the latter leads to the entry of a judgment."); *accord Ciminelli v. Cablevision*, 583 F. Supp. 158, 161 (E.D.N.Y. 1984) (treating motion for summary judgment to dismiss two affirmative defenses as a motion to strike an insufficient defense under Rule 12(f)). Team's sole claim is for copyright infringement.  Even if the Court finds Doe is precluded from resisting disclosure of his identity, Team would not be entitled to judgment on its infringement claim on that basis.  The Court will therefore treat the motion as a motion to strike.

But the Court immediately faces another problem: Doe has not raised a First Amendment defense in his pleadings.  The closest he comes is in affirmative defense 14, in which he states that "[p]laintiff has engaged in Copyright misuse by using its Copyright claim to attempt to discover the identity of critics of Plaintiff, its management

and its owners, in order to chill their constitutionally protected speech." (Dkt. 4, Ans., Aff. Def. No. 14.)[1]

The claim to which affirmative defense 14 is raised is not a claim for discovery of identity, but a claim for copyright infringement.  The defense is that Team's alleged <u>copyright misuse</u> – not the First Amendment – bars its infringement claim.  There simply is no "First Amendment defense" here.  Even if Team has the right to discover Doe's identity, the Court could still find Team had misused its copyright by bringing this suit only to silence Doe and other critics.  Put differently, affirmative defense 14 does not depend on whether Team has a right to know Doe's identity, but on whether Team is using its copyright to chill speech.

In sum, the issue of whether Doe can oppose discovery of his identity is not properly resolved on a motion for judgment on the pleadings.  And even construing the motion as one to strike pursuant to Rule 12(f), the motion would be denied, because Doe raises no affirmative First Amendment defense to disclosure of his identity.

---

[1] In his Affirmative Defense No. 10, Doe alleges "Defendants' alleged conduct is protected by the Free Speech clause of the First Amendment," but this defense is relevant to Doe's alleged infringement, not to discovery of Doe's identity.

Disclosure of Doe's identity is an issue appropriately resolved on a discovery motion, such as a motion to compel.

## C.    Application of *res judicata* and collateral estoppel

Although the Court need not reach the preclusion issue on this motion, it will do so to avoid redundant briefing, should Team later seek to compel disclosure of Doe's identity.

### 1.    *Res judicata*

Team contends that *res judicata* bars Doe from claiming a First Amendment right not to disclose his identity in this case.   Team's position is based on the denial of Doe's motion to quash Team's DMCA subpoena in the Northern District of California.

#### a.    Elements

The application of *res judicata* requires the following: "(1) A final decision on the merits in the first action by a court of competent jurisdiction; (2) The second action involves the same parties, or privies, as the first; (3) The second action raises an issue actually litigated or which should have been litigated in the first action; (4) An identity of the causes of action." *Sanders Confectionary Prods. v. Heller Financial,*

10

*Inc.*, 973 F.2d 474, 484 (6th Cir. 1992). *Res judicata* "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen*, 442 U.S. 127, 131 (1979).

### 1)   Final decision on the merits in the first action

An order denying a motion to quash a subpoena qualifies as a final decision on the merits for purposes of *res judicata*. *See Westwood Chemical Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981). Doe does not contest this. The first element is met here.

### 2)   Same parties or privies

Team maintains that Doe appeared in the California proceeding by filing his motion to quash. Doe does not contest this. While not technically a party to that proceeding, Doe likely qualifies as a privy. While privity "traditionally, arose from a limited number of legal relationships in which two parties have identical or transferred rights with respect to a particular legal interest," *Headwaters, Inc. v. U.S. Forest Service*, 399 F.3d 1047, 1053 (9th Cir. 2005), the term "is now

used to describe various relationships between litigants that would not have come within the traditional definition." *Richards v. Jefferson Cnty., Ala.*, 517 U.S. 793, 798 (1996). This includes situations where "a person, although not a party, has his interests adequately represented by someone with the same interests who is a party." *Headwaters*, 399 F.3d at 1053.

Doe, although not a party to the subpoena proceedings, represented himself there – filing a motion and reply, and arguing through counsel at a hearing. This surely qualifies as adequate representation of his interests. The second element is met here.

### 3)    Issue actually litigated or should have been litigated

Team defines the relevant issue as Doe's "First Amendment arguments" or "that the First Amendment bars the discovery of [Doe's] identity." (Dkt. 10, Pl.'s Br. 1, 8, 10.) Those were raised on the motion to quash, and even if they weren't, they should have been raised then.

Doe does not directly contest this factor, although he does contend that the DMCA proceeding was "extremely limited in scope and procedures," as Magistrate Judge Spero "had jurisdiction only over the

12

question whether Automattic could be forced to disclose whatever information it had." (Dkt. 13, Def.'s Resp. 17.)

How the issue is defined determines whether this element is met. Defined at a general level as "First Amendment arguments," or "that the First Amendment precluded discovery of [Doe's] identity," then Doe did raise that argument in the subpoena proceedings. But defining the issue in this way ignores crucial differences between the proceedings here and the DMCA proceedings.

The DMCA conferred on Team a specific statutory right: namely, to get information from Automattic. That right was fully vindicated in the DMCA proceedings and is no longer at issue. Moreover, central to Magistrate Judge Spero's decision was the fact that the DMCA requires the copyright holder to give a sworn statement that the information acquired will only be used in protecting the holder's rights in the copyright:

> It is apparent that Amthrax's First Amendment concerns are predicated on his underlying fear that TEAM will misuse the DMCA process. The DMCA subpoena is to be used solely for the purposes of protecting the serving party's rights in its copyright. *See* 17 U.S.C. § 512(h)(2)(c). Provided TEAM

13

> properly uses Amthrax's identifying information obtained during the DMCA subpoena, and does not disseminate his identity or take any retaliatory action, Amthrax will suffer only minimal harm if his Motion is denied.

*Signature Management Team, LLC v. Automattic, Inc.*, 941 F. Supp. 2d 1145, 1157 (N.D. Cal. 2013). But section 512 and the prohibition on misuse of Doe's identifying information are not applicable in this action.

Arguably, then, the issue of whether the First Amendment precludes discovery of Doe's identity is not the same in this action.

Context matters. The source and nature of Team's right to discover Doe's identity, and the restrictions on Team's use of information about Doe's identity differ significantly between this action and the subpoena proceeding. The issue in the subpoena proceeding is best articulated not as "First Amendment arguments," but as "whether the First Amendment precludes Team's statutory right under the DMCA to obtain Doe's identity." As that is not the issue here, this element is not met.

4)    Identity of the causes of action

The first action was a pre-litigation proceeding regarding the issuance of a subpoena under 17 U.S.C. § 512(h).  The purpose of the subpoena is to allow a copyright holder to pursue an infringer, rather than the ISP hosting the site where the infringing material was published.  The second action here is the copyright infringement action itself.  Team maintains this element is met because they "are both governed by the U.S. Copyright Act" (Dkt. 10, Pl.'s Br. 13) and because the "same underlying facts and evidence are involved" in both proceedings, "as they both relate to John Doe's infringement of TEAM's copyright." (*Id.* at 13-14.)

Doe responds that the DMCA proceeding was "extremely limited in scope and procedures," as Magistrate Judge Spero "had jurisdiction only over the question whether Automattic could be forced to disclose whatever information it had." (Dkt. 13, Def.'s Resp. 17.)

Courts employ a variety of tests to determine whether causes of action or claims are identical for purposes of *res judicata*.  In *Westwood Chemical* the Sixth Circuit considered whether there was "an identity of the facts creating the right of action and of the evidence necessary to sustain each action."  656 F.2d at 1227.

Westwood Chemical alleged Kulick, its former employee, and Dart Industries had conspired to wrongfully terminate a sales agreement between Westwood and Dart. Westwood settled its claims against Dart and executed a general release of "any rights" Westwood had by reason of the alleged conspiracy. Westwood then sued Kulick and, as part of discovery in that case, issued subpoenas out of district courts in California and Ohio for Dart executives. Dart filed motions to quash in both courts based on the release. The district court in California granted the motion; the district court in Ohio did as well, two years later. Westwood appealed the Ohio decision. In finding that the California court's decision had *res judicata* effect in the Ohio matter, the Sixth Circuit found an identity of facts and evidence between the claims. Specifically, the court found that (1) the subpoenaed witnesses were all Dart officers, and (2) interpretation of the same release agreement denied Westwood the right to depose the Dart officers.

Here, the underlying facts creating the rights of action are the same: Team's ownership of rights in the Work and Doe posting the work without permission. The evidence necessary to sustain each action is not, however, the same. To obtain the subpoena, Team only had to (1)

16

show that it had given Automattic the notification required by § 512(c)(3)(A), and (2) submit a sworn declaration that the purpose of the subpoena was to identify an alleged infringer and that the information would only be used to protect Team's copyright.  17 U.S.C. § 512(h)(2), (4).  To show infringement, however, Team must (1) provide evidence of ownership of the copyright and (2) prove that original constituent elements of the Work were copied.  *See Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  Team did not have to prove ownership of the copyright nor infringement to obtain the DMCA subpoena.  This element is not met.

b.   <u>*Westwood*</u> and <u>*Union Insurance*</u>

The two cases relied upon by Team – *Westwood*, discussed above, and *Union Ins. Co. v. Delta Casket Co.*, 2009 U.S. Dist. LEXIS 104151 (M.D. Tenn. July 31, 2009) – do not alter this conclusion.

*Westwood* held that "an order by one federal district court on a discovery dispute is *res judicata* on that same issue in another federal district court <u>that has concurrent jurisdiction of the discovery dispute</u>."

*Union Insurance*, 2009 U.S. Dist. LEXIS 104151, at *7 (emphasis added).

*Union Insurance* was an insurance coverage dispute. Pursuant to a judgment in an earlier Texas state court action, Union had paid costs and attorney fees on behalf of Delta, the insured. Union then filed a declaratory judgment action (the matter before the *Union Insurance* court) seeking a declaration of rights under its policy, as well as reimbursement of costs and attorney fees. Delta counterclaimed, alleging Union had acted in bad faith and in violation of Tennessee's consumer protection statute in hiring counsel to represent Delta in the Texas suit.

Union disclosed an expert witness who would opine on the adequacy of Delta's representation in the Texas matter. Delta then issued a subpoena out of the Southern District of Texas seeking production of the expert's file from the Texas litigation. Union filed a motion to quash, which was granted.

Delta then deposed the expert, who testified that he had not reviewed his filed from the Texas litigation in forming his opinion for

the *Union Insurance* case.   Delta then filed a motion to compel production of the expert's file from the Texas litigation.   The *Union Insurance* court, relying on *Westwood*, held that *res judicata* applied to Delta's motion, since the parties and the issue were the same as in the Southern District of Texas subpoena proceeding.   The court identified the issue as "whether [defendants] are entitled to attorney-client privileged and work product information in [the expert's] working files for the Texas litigation . . . the exact same issue which was litigated in the Southern District of Texas."   *Union Insurance* at *8.

Neither case suggests *res judicata* should apply here. This matter does not involve courts with concurrent jurisdiction over the same dispute, as in *Westwood*.   And the issue in *Westwood* was truly the precise issue litigated in the other subpoena proceeding: whether the release prohibited depositions of Dart executives.   Nothing differed in the respective courts' analyses of that issue.   Likewise, in *Union Insurance*, the precise issue had been litigated in the federal court in Texas: whether Delta was entitled to attorney-client privileged information and work product in the same expert witness' file from the same state court litigation.   Nothing differed in the analyses of that

19

issue.  As discussed above, however, there are differences between the respective analyses of Doe's First Amendment privilege in this case and in the DMCA action.

   c. *Res judicata* does not apply here

  In sum, Team's *res judicata* argument fails, as only two of the four elements are present here.

  Having decided that *res judicata* does not apply, the Court need not reach Doe's argument that the doctrine of merger bars Team from seeking disclosure of Doe's identity here.  The Court notes, however, that in responding to Doe's merger argument, Team insists that it could not possibly have joined this infringement claim with the DMCA proceeding, because the DMCA proceeding was limited – it only allowed Team to pursue a pre-suit subpoena.  (Dkt. 14, Pl.'s Reply 5.)  In other words, Team concedes that the two proceedings are, in fact, meaningfully different – confirming that *res judicata* is inapplicable.

   2. Collateral estoppel

   a. Elements

  Under federal law, application of collateral estoppel requires that:

(1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*NAACP v. Detroit Police Officers Ass'n*, 821 F.2d 328, 330 (6th Cir. 1987). The purposes are judicial efficiency and "to avoid inconsistent results." *Gilbert v. Ferry*, 413 F.3d 578, 580 (6th Cir. 2005).

1)      Precise issue raised and actually litigated

Team contends the precise issue here is "whether the First Amendment bars disclosure of [Doe's] identity," and that the issue was raised and litigated in the DMCA proceeding. Doe does not contest this element. As discussed above, however, the precise issue here was not actually litigated in the DMCA proceeding. This element is not met.

2)      Determination necessary to outcome in first action

Team argues the resolution of Doe's First Amendment argument was necessary to the outcome of the subpoena action. Doe does not contest this element. This element is met here.

### 3)   Final judgment on the merits

Team maintains the subpoena action resulted in a final appealable judgment on the merits, citing *Stolt-Nielsen Transp. Group v. Celanese AG*, 430 F.3d 567, 575 (2d Cir. 2005) and *London v. Does*, 279 F. App'x 514, 514 (9th Cir. 2008) as cases in which courts of appeals decided appeals from denials of motions to quash. Doe does not contest this element. This element is met here.

### 4)   Full and fair opportunity to litigate

Team points to the substantial briefing in the DMCA action, and to the fact that Magistrate Judge Spero held a hearing and issued a lengthy written opinion, as fulfilling this element. Doe counters that this element requires consideration of "differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them," including whether subsequent proceedings are plenary. In support, Doe cites

22

Restatement of Judgments 2d §§ 28(3) and 29 cmt. (d), as well as *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 & n.15 (1979) (acknowledging that "differences in available procedures may sometimes justify not allowing a prior judgment to have estoppel effect in a subsequent action").

As discussed above, the scope of the DMCA action, the right at issue, and the restrictions on Team's use of Doe's identity are meaningful distinctions between the DMCA action and this action. On that basis, the Court finds this element is not met.

### b.   Collateral estoppel does not apply here

Two of the four elements of collateral estoppel are not met here. Of particular importance is the element of whether the precise issue is raised and litigated in both proceedings. The DMCA proceeding involved Team's rights against Automattic, not Doe. Magistrate Judge Spero's decision turned primarily on the statutory restriction on the use of identifying information. A different decision here regarding

disclosure of Doe's identity would not be inconsistent with the decision in the DMCA proceeding.[2]

## III.  Conclusion

Accordingly, Team's Motion for Partial Judgment on the Pleadings (Dkt. 10) is DENIED; and

The Court will hold a telephonic status conference with the parties on **March 26, 2015**, **at 2:00 P.M.** regarding next steps in the litigation of this case.  Team's counsel shall initiate the call.

---

[2] Having found neither *res judicata* nor collateral estoppel precludes Doe from opposing disclosure of his identity on First Amendment grounds, the Court need not reach Doe's argument that Standard 512, which provides an exception to the rules of preclusion for claims of privilege, applies here.  Nonetheless, the Court notes that, while the Sixth Circuit does not appear to have formally adopted or followed Standard 512, at least one court in this Circuit has cited favorably to it.  *Amway Corp. v. Procter & Gamble Co.*, No. 98-726, 2001 WL 1818698, at *2 (W.D. Mich. Apr. 3, 2001).  And Team's position that Standard 512 only applies to attorney-client and work product privileges is incorrect.  *See* Advisory Committee Notes to Fed. R. Evid. 501 ("It should be clearly understood that, in approving this general rule as to privileges, the action of Congress should not be understood as disapproving any recognition of a psychiatrist-patient, or husband-wife, or any other of the enumerated privileges contained in the Supreme Court rules.").  The Supreme Court has long recognized a First Amendment privilege.  *NAACP v. Alabama*, 357 U.S. 449, 462 (1958); *accord The Courier Journal v. Marshall*, 828 F.2d 361 (6th Cir. 1987).  Other courts have considered First Amendment privilege in the context of discovery orders.  *See, e.g., In re Motor Fuel Temperature Sales Practices Litigation*, 641 F.3d 470, 480-81 (10th Cir. 2011).

IT IS SO ORDERED.

Dated: March 18, 2015                    s/Judith E. Levy
Ann Arbor, Michigan                      JUDITH E. LEVY
                                         United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 18, 2015.


                                         s/Felicia M. Moses
                                         FELICIA M. MOSES
                                         Case Manager