# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Signature Management Team, LLC,

               Plaintiff,

v.

John Doe,

               Defendant.

_____/

Case No. 13-cv-14005

Hon. Judith E. Levy

Mag. Judge David R. Grand

## ORDER DENYING DEFENDANT'S
## <u>MOTION FOR SUMMARY JUDGMENT [25]</u>

This case is before the Court on defendant John Doe's motion for summary judgment seeking dismissal of plaintiff Signature Management Team's claim for injunctive relief under the Copyright Act, 17 U.S.C. §§ 501 *et seq.* (Dkt. 25.) Following plaintiff's declaration and motion to compel discovery pursuant to Fed. R. Civ. P. 56(d) (Dkts. 35, 40), which on November 4, 2015, the Court granted in part and denied in part (Dkt. 48), plaintiff conducted the necessary discovery to respond to defendant's motion. For the reasons stated below, defendant's motion is denied.

## I.  Background

Signature Management Team, LLC ("Team") is a multi-level marketing ("MLM") company that sells motivational materials teaching people how to make money in MLM businesses.  Doe writes a blog under the pseudonym "Amthrax" that is critical of MLM businesses in general and of Team specifically.  This action involves the fourth edition of a book, "The Team Builder's Textbook" [hereinafter "the Work"], authored in 2009 by Orrin Woodward and Chris Brady, leaders of Team.  Plaintiffs claim that the Work, currently in its ninth edition, has sold over 100,000 copies.  (Dkt. 54 at 10, Dkt. 54-2 at 3.)

Defendant admits that on January 18, 2013, he posted a hyperlink on his blog to a PDF copy of the Work, which readers could download to their own computers.  (Dkt. 26 at 7.)  It is not known how many of defendant's blog readers, if any, accessed the PDF file and downloaded it to their computers.  (Dkt. 54-3 at 14.)  Defendant states that even though his blog provides an email address through which he can be contacted, neither Team nor the authors directly asked him to cease and desist.  (Dkt. 26 at 8.)  On February 8, 2013, Team served defendant's blog host provider with a take-down notice pursuant to the

Digital Millennium Copyright Act, 17 U.S.C. § 512, and on February 16, 2013, Doe first learned of Team's notice and copyright claim through his internet provider.  (*Id.* at 8-9.)  On February 19, 2013, Doe changed the hyperlink on his blog to direct readers to a copy of the Work on a website not under his control, and then, on February 22, 2013, on the advice of counsel, he removed the hyperlink entirely.  (*Id.* at 9.)

Defendant avows that he has no intention to repost the Work, unless a final adjudication from the Court allows it.  (*Id.*)  Defendant asserts that his use of an outdated edition of the Work constitutes a fair-use limitation to a copyright holder's exclusive rights under 17 U.S.C. § 107.  (Dkt. 25 at 21-30.)  He also argues that plaintiff's pursuit of this lawsuit is a so-called misuse of copyright, which some circuits have determined bars a plaintiff from relief.  (*Id.* at 30-32.)  Finally, defendant asserts that even if infringement is found here, plaintiff is not entitled to injunctive relief.  (*Id.* at 32-34.)

Plaintiff owns the copyright to the Work, and explains that it is an instructional work, with different editions applying the same principles, but through illustrations from different MLM companies and products.  (Dkt. 54 at 11-12.)   At the same time, defendant also appears to agree

3

with plaintiff that earlier editions are "effective substitutes" for the current edition, and that his free copies had a negative impact on the market for the current edition.  (*Id.* at 16.)  Putting these two agreed-upon facts together, plaintiff asserts that defendant's distribution of a full copy of the fourth edition negatively affected the market for plaintiff's current editions.  (*Id.* at 16.)  Both the allegedly infringed fourth edition and the current ninth edition are available for purchase—the fourth edition for $1.98 and the ninth edition for $23.95.  (Dkt. 54-8 at 2, Dkt. 54-7 at 2.)  Plaintiff does not attempt to quantify the monetary damages associated with this asserted negative market effect, nor does plaintiff seek monetary damages.

Plaintiff further argues that defendant receives financial benefit from his blog, in that he receives his blogging platform from the host provider at no charge as the host provider gains advertisement revenue from the blog.  (Dkt. 54 at 12.)  Plaintiff asserts that defendant's blog specifically targets Team, and not the MLM industry in general, with a goal of negatively affecting Team's business.  (*Id.* at 13-15.)  Plaintiff provides evidence to show that defendant "has also copied and distributed, without permission, a variety of internal documents" from

4

Team and its affiliates, including some in late 2015. (*Id.* at 16, Dkts. 54-24, 54-25.)

Plaintiff opposes defendant's invocation of fair use (Dkt. 54 at 18-30), and further rejects defendant's misuse defense as inapplicable to these facts. (*Id.* at 30-32.) Finally, plaintiff asserts that there are genuine issues of material fact regarding its request for injunctive relief, particularly on whether defendant is likely to infringe again, which prevent the entry of summary judgment. (*Id.* at 32-33.)

Defendant replies that plaintiff misstates the standard for fair use. (Dkt. 55 at 4-6.) He argues that it is "implausible" that readers, who are potential recruits to Team, would see older editions of the Work as a "functional substitute" for the current edition; and that here, where his use was noncommercial, it is plaintiff's burden to demonstrate that there was meaningful market harm. (*Id.* at 7-8.) He further rejects plaintiff's contention that there is a genuine issue of fact regarding the "substantial likelihood" that he would infringe again. (*Id.* at 8.) Finally, he asserts that plaintiff has misconstrued the evidence regarding his relationship with Team's competitor, and that none of

that evidence supports the conclusion that he is allied with plaintiff's competitor to do plaintiff harm. (*Id.* at 10.)

## II. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002)).

If the moving party bears the burden of persuasion at trial, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986)(quotation omitted). When the non-moving party would bear the burden of persuasion at trial, the moving party can meet its burden under Rule 56 in one to two ways:

6

"[f]irst, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). The reasoning behind this rests on the understanding that if the "nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law." *Id.* (citing *Anderson*, 477 U.S. at 249).

## III. Analysis

Evaluating the applicable law and the undisputed facts, defendant's publication of plaintiff's copyright material does not constitute fair use under 17 U.S.C. § 107. Defendant's copyright misuse defense is neither established law in the Sixth Circuit nor properly supported by evidence if it were established law. The undisputed facts

also point to the need for injunctive relief to protect plaintiff's copyright,

but not to the full extent sought by plaintiff.[1]

### A. Defendant Has Not Demonstrated Fair Use

Notwithstanding   a   copyright   holder's   exclusive   rights,   the

Copyright Act provides for:

> the fair use of a copyrighted work, including such use by reproduction in copies . . . or by any other means . . . , for purposes such as criticism, comment, news reporting, teaching   .   .   . ,   scholarship,   or   research,   is   not   an infringement of copyright.   In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—
>
> **(1)** the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> **(2)** the nature of the copyrighted work;
>
> **(3)** the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> **(4)** the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

---

[1] Plaintiff's requested relief included a permanent injunction identifying Doe and ordering him to cease all infringing activities regarding the Work, and an order impounding and destroying all copies of the Work retained by Doe.  (Dkt. 1 at 6-7.)

Fair use is an affirmative defense for which defendant bears the burden of proof. *Princeton Univ. Press v. Mich. Document Servs., Inc.*, 99 F.3d 1381, 1390 n.5 (6th Cir. 1996). "Fair use is a mixed question of law and fact" requiring a case-by-case analysis. *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985). The above factors enumerated in the Act are not an exhaustive list, but rather, are the ones identified by Congress to be "especially relevant in determining whether the use was fair." *Id.* "[T]he four statutory factors [are not to] be treated in isolation, one from another. All are to be explored, and the results weighed together, in light of the purposes of copyright." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994).

### 1. Purpose and Character of the Use

The first factor concerns the purpose and character of the use, "including whether such use is of a commercial nature or is for nonprofit educational purposes." *Campbell*, 510 U.S. at 578. The analysis is guided by the fundamental concern for whether the use "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in

9

other words, whether and to what extent the new work is 'transformative.'" *Id.*

Indeed, "the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Id.* at 579. Verbatim copies are not at all transformative. *Princeton Univ. Press*, 99 F.3d at 1389. While the commercial or non-profit use is a consideration under this factor, an educational or non-profit use "does not insulate it from a finding of infringement, any more than the commercial character of a use bars a finding of fairness." *Campbell*, 510 U.S. at 584. This secondary issue considers whether "the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Balsey v. LFP, Inc.*, 691 F.3d 747, 758 (6th Cir. 2012) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 544 (6th Cir. 2004)).

Here, defendant's use is a verbatim copy that was posted in such a manner that anyone could download a complete copy of the Work. Defendant argues that his hyperlink to a full copy of the Work was as connected to his commentary and criticism of Team as "the back page of a newspaper is connected to the front." (Dkt. 25 at 25 (quoting *Nicosia*

10

*v. De Rooy*, 72 F. Supp. 2d 1093, 1103 (N.D. Cal. 1999).) This argument presupposes that the Work had to be reproduced in its entirety to support defendant's commentary. However, plaintiff shows that defendant also used the Work in a way plaintiff does not challenge—offsetting quotations from the Work to illustrate his criticisms. (*See* Dkts. 54-12, 54-13.) Defendant has not articulated how the verbatim reproduction of plaintiff's materials was in any way transformative or, barring that, integral to his commentary, especially given that he clearly was able to assert and illustrate his ideas with excerpts of the Work. (*See* Dkt. 54-3 at 22 (defendant also acknowledged that he has used excerpts and links to sites where copyrighted material is for sale to illustrate his commentary).)

As to whether the use was commercial, defendant argues that his blog serves a primary purpose defined by the fair-use section of the statute—namely, to provide commentary, criticism and information to readers—and that it was without commercial motive. (Dkt. 25 at 23-24.) But plaintiff contends that defendant gained free hosting for his blog through advertising revenue his blog generated, and that defendant pursued a "commercial purpose" through his blog—to harm

11

defendant and benefit Team's business rivals.   (Dkt. 54 at 23.) Defendant does not deny plaintiff's assertions, but states that he derives no financial benefit from his blog.  (Dkt. 26 at 2.)

"The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from the exploitation of the copyrighted material without paying the customary price." *Harper & Row,* 471 U.S. at 562.  While plaintiff's arguments carry some water with regard to the fourth fair use factor, market harm, they only point to an indirect benefit to defendant or direct harm to plaintiff.  As such, those arguments are too attenuated to conclude that defendant's purpose was commercial under the factor-one analysis.

Factor one, use and purpose, favors plaintiff, given that the use was a complete reproduction of the Work.  Irrespective of whether the use was commercial or non-commercial, the nature of the use here weighs significantly in plaintiff's favor.

## 2. Nature of the Work

The second factor, the nature of the copyrighted work, "calls for recognition that some works are closer to the core of intended copyright

protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Campbell*, 510 U.S. at 585. Analyses of this factor tend to focus on whether the copyrighted work is creative as opposed to factual or informational, *see, e.g., Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348-49 (1991), and whether the copyrighted work is published or unpublished. *Harper & Row*, 471 U.S. at 563.

Defendant characterizes the Work as an out-of-print older edition—"an historical artifact which documents Team's 'story' circa 2009 . . . ." (Dkt. 25 at 26.) By contrast, plaintiff describes the Work as an original and creative textbook. (Dkt. 54 at 26.) Plaintiff argues that the Work may have been supplanted by newer editions, but nonetheless could impair plaintiff's ability to promote new ideas and innovations in its latest editions if made available to the public. (*Id.* at 27.) Defendant attempts to analogize the Work to the recording of an earnings call in *Swatch Group Mgmt. Svcs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73 (2d Cir. 2014), which afforded its plaintiff owner only a "thin" right regarding this factor of the fair-use analysis, because its nature was factual and

the access to this factual information expanded the scope of permissible fair use. (Dkt. 25 at 26.)

This analogy holds if the Work only presents facts, but not if it is original in any significant way. Here, defendant argues that because different editions of Team's textbook have focused on different business stories, each edition is superseded by the next edition, with the past editions being merely an "historical record." But defendant has not disputed that each edition features plaintiff's original instructional content, even if the examples focus on different business cases—indeed, he admits that the Work is a textbook instructing readers on how to build an MLM business. (Dkt. 54-3 at 20.) Moreover, he does not appear to have the basis to make any claims regarding the content of the various editions, since he admitted in his deposition that he has not read any of the editions other than "parts of the 4th Edition." (*Id.* at 24.)

Factor two of the fair-use analysis favors plaintiff, because there is no dispute that the Work features original content, which is at the heart of what the Copyright Act protects.

14

### 3. Amount and Substantiality of the Portion Used

As to the third factor, the parties do not dispute that Doe posted a copy of the entire work. "While wholesale copying does not preclude fair use per se, copying an entire work militates against a finding of fair use." *Balsley*, 691 F.3d at 760 (quoting *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003)). Defendant argues that substantial use may nonetheless be fair use, particularly when it is for a transformative purpose. (Dkt. 25 at 27.) He also asserts that the court's reasoning in *Swatch Group*, applies here—that "the more precisely and faithfully the entire earnings call was transmitted to the public, the more 'informational value' it has." (*Id.* at 28 (citing 742, F.3d at 33).) However, the use here is not transformative, *see* discussion section III.A.1, *supra*, and *Swatch Group* is distinguishable because the material here is original, not factual. *See* discussion section III.A.2, *supra*.

The third factor in the fair-use analysis also favors plaintiff.

### 4. Market Harm

The fourth factor concerns market harm to the value of plaintiff's copyright, and "is undoubtedly the single most important element of fair

use." *Harper & Row*, 471 U.S. at 566. "[T]o negate fair use one need only show that if the challenged use 'should become widespread, it would adversely affect the potential market for the copyrighted work.'" *Id.* at 568 (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984)). The potential for harm to the market for derivative works must also be considered. *Harper & Row*, 471 U.S. at 568. Subsequent editions of a publication are derivative works. *See* 17 U.S.C. § 101 ("A 'derivative work' is a work based upon one or more preexisting works . . . . A work consisting of editorial revisions, annotations, elaborations, or other modifications, which, as a whole, represent an original work of authorship, is a 'derivative work'").

Doe argues that he gained no financial benefit from posting the fourth edition of the Work, and that the plaintiff has not shown that his posting has caused cognizable market harm. (Dkt. 25 at 29.) Plaintiff asserts the various editions are "functional equivalent[s]," so that defendant's conduct harmed the market for that edition and the subsequent derivative works. (Dkt. 54 at 29 (citing Dkt. 54-3 at 20, 24).) Defendant had the burden of proof here, and plaintiff has at least demonstrated a triable issue on the question of whether defendant's use

16

harmed the market for the Work and its derivative works, including the most current edition.

Plaintiff has raised a material question of fact as to whether defendant's use caused market harm. Considering that the first three fair-use factors favor plaintiff and a question of fact remains on the fourth factor, summary judgment cannot be granted to defendant on the basis of fair use.

### B. Defendant's Claim of Copyright Misuse

Some courts have recognized a copyright misuse defense to infringement, analogous to the misuse defense in patent law. *See, e.g., Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 976-77 (4th Cir. 1990). The Sixth Circuit does not appear to have accepted or rejected the copyright misuse defense. *Microsoft Corp. v. Compusource Distribs., Inc.*, 115 F. Supp. 2d 800, 810 (E.D. Mich. 2000) (discussing cases).

The core of this defense is that the holder has used the copyright to extend its monopoly beyond the scope of the copyright. *See Lasercomb Am.*, 911 F.2d at 976-77; *Malibu Media v. Doe*, No. 13-11432, 2014 WL 2616902, at *9-10 (E.D. Mich. June 12, 2014). The doctrine arises from the "unclean hands" doctrine of equity and typically applies when a

17

copyright holder has applied tying or other monopolistic practices—and only if the defendant is directly harmed by the plaintiff's action. 4-13 Nimmer on Copyright § 13.09. Copyright misuse, where it is recognized, applies when a defendant can show: "(1) that [the plaintiff] violated the antitrust laws, or (2) that [the plaintiff] illegally extended its monopoly beyond the scope of the copyright or violated the public policies underlying the copyright laws." *Microsoft Corp.*, 115 F. Supp. 2d at 810 (quoting *In re Indep. Serv. Orgs. Antitrust Litig.*, 85 F. Supp. 2d 1130, 1175 (D. Kan. 2000) (citing *Lasercomb Am.*, 911 F.2d at 978)).

Doe contends the misuse defense also applies to the use of copyright to silence public criticism, citing cases from other circuits. (Dkt. 25 at 31.) Defendant argues that plaintiff has pursued this "*de minimis*" infringement as a pretext to identify and silence him. (*Id.* at 31-32.) Plaintiff counters that there is no evidence to support defendant's theory, and it cannot be misusing its copyright by filing an infringement action pursuant to the rights it has under the Copyright Act. (Dkt. 54 at 31.) Moreover, plaintiff asserts that reproducing an entire work is not a "*de minimis*" violation—one that "is so trivial 'as to fall below the quantitative threshold of substantial similarity, which is

18

already a required element of actionable copying." (*Id.* (quoting *Calibrated Success, Inc. v. Charters*, 72 F. Supp. 3d 763, 770 (E.D. Mich. 2014)); *Gordon v. Nextel Commc'ns & Mullen Advert., Inc.*, 345 F.3d 922, 924 (6th Cir. 2003) (quoting *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 77 (2d Cir. 1997)). Without deciding the issue of infringement in the context of the motion before the Court, plaintiff's point is nonetheless a strong one. It is defendant's burden to show that an infringement is not actionable because it is *de minimis*, and such a finding would be uncommon when the work is copied in its entirety. *See, e.g., Calibrated Success*, 72 F. Supp. 3d at 770 ("There is nothing *de minimis* about copying any entire video.").

Here, even if the Sixth Circuit clearly recognized the defense of copyright misuse, defendant has not met his burden, while plaintiff has raised a question of material fact regarding this claim that would preclude summary judgment.

### C. Injunctive Relief

Defendant alternatively argues that plaintiff is not entitled to injunctive relief for this act of infringement, even assuming that he is found to have infringed on plaintiff's copyright. (Dkt. 25 at 32).

19

Defendant cites *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392-93 (2006), and *Bridgeport Music, Inc. v. Justin Combs Publ'g*, 507 F.3d 470, 492 (6th Cir. 2007), in support of his contention that the ordinary equitable factors point to a denial of plaintiff's request injunctive relief. (*Id.* at 32-34.)

A court may grant injunctive relief "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). The key showing necessary to justify a permanent injunction is one "of past infringement and a substantial likelihood of future infringement." *Bridgeport Music*, 507 F.3d at 492 (quoting 5-14 Nimmer on Copyright § 14.06). The showing of "substantial likelihood of future infringement" must convince the Court that defendant has engaged in recurring misconduct or "exhibits an unfortunate tendency conveniently to ignore, from time to time . . . plaintiffs' proprietary rights." *Broad. Music, Inc. v. Diamond Inv., Inc.*, No. 1:11-CV-927, 2013 WL 1681151, at *6 (S.D. Ind. Apr. 17, 2013) (quoting *Milene Music, Inc. v. Gotauco*, 551 F. Supp. 1288, 1295 (D.R.I. 1982)) (citing *Bridgeport Music*, 507 F.3d at 492; *Broad. Music, Inc. v. Niro's Palace, Inc.*, 619 F. Supp. 958, 963 (N.D. Ill. 1985)); *see also Virtual Studios, Inc. v.*

20

*Beaulieu Grp., LLC*, 987 F. Supp. 2d 769, 778-79 (E.D. Tenn. 2013). Evidence of substantial likelihood can be found in "the magnitude of the infringement, whether the infringer maintains possession of the infringing product, and whether the infringer can or has continued its infringing conduct even after the initiation of court proceedings." *Calibrated Success, Inc. v. Charters*, 72 F. Supp. 3d 763, 773 (E.D. Mich. 2014) (further citation omitted).

Even when there is a finding of substantial likelihood, the traditional factors for permanent injunctions in a copyright-infringement case must also be considered before granting an injunction. *eBay Inc.*, 547 U.S. at 392–93. The factors necessary for plaintiff to secure a permanent injunction are:

> (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction.

*Calibrated Success, Inc.*, 72 F. Supp. 3d at 774 (citing *eBay Inc.*, 547 U.S. at 391–93). On a motion for summary judgment, the defendant can achieve dismissal by demonstrating that plaintiff lacks evidence, or

21

that its evidence is not sufficient, to establish one of these elements. *See Celotex Corp.*, 477 U.S. at 331.

There is no dispute in this case that the Work is an original work and its copyright is owned by plaintiff.  However, the parties also do not dispute that plaintiff removed the document shortly after he was informed of the takedown notice.  Further, plaintiff has not asserted its rights with regard to other materials it has published that appear on defendant's blog.  Finally, defendant avows that he has no intention to repost the Work, and plaintiffs have not presented evidence to the contrary.[2]

There is no evidence that defendant has repeatedly ignored plaintiff's asserted rights, a factor that weighs heavily in finding a substantial likelihood of future infringement. *See, e.g., Virtual Studios, Inc. v. Beaulieu Grp., LLC*, 987 F. Supp. 2d 769, 778-79 (E.D. Tenn. 2013) (discussing cases).  *See also Nat'l Bd. of Med. Exam'rs v. Optima Univ. LLC*, No. 1:09-CV-01043-JDB-CG, 2011 WL 7615071, at *10 (W.D. Tenn. Sept. 29, 2011); *Music v. Heiman*, No. 09-CV-341-BBC, 2010 WL 1904341, at *5 (W.D. Wis. May 11, 2010).  And there is no

---

[2] Defendant qualifies his statement by adding that he reserves the right to repost the Work if this Court clearly indicates that it is lawful to do so.  (Dkt. 26 at 9.)

indication of how an injunction against this defendant can prevent the potential harm that might result from someone in possession of the file reposting it. *See*, *e.g.*, *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981 (9th Cir. 2011) (upholding district court's denial of injunctive relief because there was no indication of how the potential harm of bankruptcy would be forestalled by injunctive relief).

Nonetheless, defendant apparently still possesses a full PDF copy of the Work, and admits that other copies may exist on the computers of individuals who downloaded a copy from his blog posting. Moreover, there is no evidence regarding how many, if any, of his blog readers downloaded the copy. A sister court has found that similar conditions support injunctive relief. *See*, *e.g.*, *ABKCO Music, Inc. v. Washington*, No. 11-10763, 2011 WL 4953078, at *12 (E.D. Mich. Oct. 18, 2011) ("The ability to remove the infringing material does not prevent the harm that may be caused by the initial access[i]bility, no matter how brief, of the infringing material."). However, in that case, the defendants did not properly brief the issue of the infringing video posted online, and there was a material issue of fact regarding whether the video had been

taken offline; therefore, the plaintiffs' assertions regarding the need for injunctive relief were deemed unopposed. *Id.* at *6-7, *11-12.

Plaintiff also provides an email exchange between defendant and a colleague who is a proponent of plaintiff's main competitor, Amway. (Dkt. 54-23; Dkt. 54-3 at 11.)   Plaintiff argues that this exchange demonstrates defendant's positive response to the impact his infringement of plaintiff's work had on Amway and demonstrates defendant's desire to harm plaintiff's business.   (Dkt. 54 at 14-15 (discussing Dkt. 54-23).)   Defendant resolutely rejects that he has sought to benefit Amway and asserts that plaintiff has misunderstood a specific criticism in his blog.   (Dkt. 55 at 10 ("It is absurd to suggest that the Amthrax Blog—the very title of which suggests that Amway is toxic—is pro-Amway or even neutral towards Amway.") & n.10.)

Defendant's disavowal of any future infringement aside, there is defendant's admission that he retains a copy of the Work, and he has admitted that he posted the Work in its entirety online.  The injunctive relief factors do not favor defendant in this matter; therefore, defendant's motion regarding injunctive relief is denied.

24

### D. Relief Due Plaintiff

Under Fed. R. Civ. P. 56(f)(1), courts may grant summary judgment for a nonmovant, provided there has been notice and a reasonable time for the parties to respond. Additionally, the Court may grant injunctive relief under the Copyright Act "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Among the remedies for infringement available to courts is the ability to order the impounding and disposition of infringing articles. 17 U.S.C. § 503.

Here, plaintiff argues that defendant's retention of a full copy of the Work, his animus towards Team, and his continued copying and posting of digital copies of internal Team documents constitute the substantial likelihood of future infringement requireed for injunctive relief. (Dkt. 54 at 32-33.) While defendant admits his possession of the Work, he has avowed not to persist in the infringement, and plaintiff has not shown this to be false. Moreover, there is no evidence that plaintiff has sought to vindicate its rights regarding any of the documents it asserts defendant has posted online despite its copyright.

An additional consideration in this matter is defendant's anonymity and plaintiff's specific request for injunctive relief to reveal his identity.   As discussed in the Court's previous order compelling discovery, the decision to unmask an anonymous speaker requires "a balancing between the merits of the plaintiff's claim or need for the information, compared with the rights of the defendant to speak anonymously." (Dkt. 48 at 14-15.)  In that prior order, plaintiff's need was to ascertain the nature of the alleged infringement and to inquire about whether there is substantial likelihood of future infringement, on a theory that defendant had significant ties to business competitors and thereby held a motive to harm plaintiff and/or derived financial benefit from his infringement of the Work.  (*Id.* at 13-14, 22.)  Defendant had asserted that a credible specter of harassment by plaintiff justified the need for continued anonymity.  (*Id.* at 26.)

With defendant's admission that he infringed on plaintiff's copyright, and the finding that summary judgment cannot be granted on his affirmative defenses, the remaining question before the Court is the extent of injunctive relief due plaintiff.   The Court is inclined to enter an order requiring plaintiff to destroy all copies in all formats and

26

media of the Work still in his possession and provide suitable confirmation to plaintiff that he has done so, under the name of John Doe. Further unmasking of defendant has not been shown to be necessary in light of defendant's sworn testimony that he will not engage in future infringement with respect to the Work, and there being no evidence that any infringement has taken place during the lengthy time this case has been pending.

The Court believes that in light of the above, summary judgment is warranted in plaintiff's favor with regard to its claim for copyright infringement and limited injunctive relief.   Fed. R. Civ. P. 56(f) permits the Court to enter summary judgment in favor of a nonmovant after giving notice and a reasonable time to respond.  Accordingly, the Court will permit the parties to submit supplemental briefing no later than June 28, 2016, regarding the entry of summary judgment for plaintiff.

## IV.   CONCLUSION

For the reasons provided above, defendant cannot demonstrate that his posting of a full copy of plaintiff's copyrighted material was fair use as defined by 17 U.S.C. § 107 and the controlling case law. Defendant's attempt to apply a "copyright misuse" defense is also

27

unavailing.   Finally, there are material issues of fact that prevent dismissal of plaintiff's prayer for injunctive relief at this stage. Defendant's motion for summary judgment (Dkt. 25) is hereby **DENIED**.

The parties are permitted to submit supplemental briefing no later than **June 28, 2016**, regarding the potential entry of summary judgment in favor of plaintiff on its infringement claim and corresponding injunctive relief.

IT IS SO ORDERED.

Dated: May 19, 2016                    s/Judith E.  Levy
Ann Arbor, Michigan                    JUDITH E.  LEVY
                                       United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 19, 2016.

                                       s/Felicia M.  Moses
                                       FELICIA M.  MOSES
                                       Case Manager