UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Signature Management Team, LLC,

    Plaintiff,

v.

John Doe,

    Defendant.

Case No. 13-cv-14005

Judith E. Levy
United States District Judge

Mag. Judge David R. Grand

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO MAINTAIN PROTECTION OF HIS ANONYMITY [91]

This case is before the Court on remand from the Sixth Circuit and defendant John Doe's motion to maintain protection of his anonymity. (Dkt. 91.) The facts of this case have been recounted extensively, both by the Sixth Circuit and this Court. *See Signature Mgmt. Team, LLC v. Doe*, 876 F.3d 831 (6th Cir. 2017); *see also Signature Mgmt. Team, LLC v. Doe*, No. 13-CV-14005, 2015 WL 1245861, at *1 (E.D. Mich. Mar. 18, 2015). In brief, Doe is an anonymous blogger who writes under the pseudonym "Amthrax." On his blog by the same name, Doe criticizes multi-level marketing ("MLM") companies generally and plaintiff Signature

Management Team specifically. In 2013, Doe posted a link on his blog that allowed readers to download the Fourth Edition of "The Team Builder's Textbook" ("the Work"), a guide to participating in plaintiff's MLM business.

After the Court granted summary judgment in favor of plaintiff on its copyright infringement claim, but declined to reveal Doe's identity, plaintiff appealed only the decision to maintain Doe's anonymity to the Court of Appeals. The Sixth Circuit remanded the case, instructing the Court to apply a balancing test to determine whether maintaining Doe's anonymity is appropriate. *Signature Mgmt.*, 876 F.3d 836

For the reasons set forth below, a balancing of the relevant factors indicates that Doe's anonymity should continue to be protected.

**I.  Legal Standard**

"There is a strong presumption in favor of open judicial records," and only "the most compelling reasons can justify non-disclosure of judicial records." *Signature Mgmt. Team*, 876 F.3d at 836 (quoting *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983) and *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 476 (6th Cir. 1983)) (internal formatting omitted). The greater the public's interest in

the information to be hidden, the more compelling the reason for non-disclosure must be. *Id.* Conversely, "the burden on the party seeking non-disclosure is diminished where there is minimal public interest in learning the non-disclosed information." *Id.* When non-disclosure is appropriate, it "must be narrowly tailored to serve that [compelling] reason." *Id.* (citing *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2015)).

This case presents an issue somewhat different from the typical unsealing case, and thus "require[s] a slightly different analysis than standard unsealing decisions." *Id.* at 837. Unlike "standard unsealing decisions," where courts often decide whether records should be sealed from the public during discovery, the question here is whether defendant's identity should be revealed after a judgment has been issued against him, and "one of the *parties*, in addition to the public, is unaware of the defendant's identity." *Id.*

"[L]ike the general presumption of open judicial records, there is also a presumption in favor of unmasking anonymous defendants when judgment has been entered for a plaintiff." *Id.* To determine whether unmasking is appropriate, this Court was instructed to weigh the factors

3

favoring anonymity against the public's interest in open proceedings in general and in this particular copyright-infringement lawsuit, as well as plaintiff's interest in unmasking Doe." *Id.* at 838. The primary factor "favoring anonymity" is whether the defendant "engages in substantial protected speech that unmasking will chill." *Id.*

**II. Analysis**

As outlined by the Sixth Circuit, this analysis requires the Court to weigh three sets of interests against each other: the public's interest in learning Doe's identity, plaintiff's interest in learning Doe's identity, and Doe's interest in remaining anonymous. The Court will also separately address the concerns raised in the dissent. *See Id.* at 839 ("[T]o the extent that the concerns identified by the dissent cut in favor of unmasking Doe, the district court should consider those factors on remand.").

a. <u>The Public's Interest in Unmasking</u>

The public's interest in learning Doe's identity is twofold, and comprises both the public's interest generally in open proceedings as well as the public's interest "in this particular copyright-infringement lawsuit[.]" *Signature Mgmt. Team*, 876 F.3d at 838. "Determining the

4

public interest in the disclosure of the identity of a Doe defendant is a fact-intensive inquiry." *Id.* at 837.

As a general matter, the "open records doctrine is premised on allowing the public to inspect judicial records to increase public confidence in and understanding of the judicial system, and diminish the possibility of injustice, incompetence, perjury, and fraud." *Id.* The public has a right to know who the parties are in almost every case before a federal district court as a matter of "public confidence in and understanding of the judicial system." *See id.* In most cases, without knowing the defendant's identity the public cannot be certain that the Court achieved a just result.

However, the public's interest in the identity of the defendant "in this particular copyright-infringement lawsuit" is less pronounced than its general interest in open court records. When evaluating the public's interest in a specific "copyright case, the court should consider the reach of the copyrighted material, the economic losses suffered by the copyright holder, the reach of the infringed version of the copyrighted material, and the intent of the infringer." *Id.* Normally, "the public interest would be

5

stronger when the infringed material is a bestselling novel rather than a sparsely read instruction manual." *Id.*

First, the copyrighted material at issue here does not have significant reach as it is a "sparsely read instruction manual" rather than a "bestselling novel." *See id.* The Work is an out of date "textbook" that teaches its readers how to be successful in the MLM business, and is aimed at a narrow audience. Unlike a bestselling novel written to draw in a wide-ranging readership, the Work was written for the small subset of the population interested in MLM. Further, Doe did not violate the copyright of the then current version of the work. The link posted on Doe's website sent readers to the fourth edition of the Work, which was on its ninth edition at that time.

Second, the economic losses suffered by the copyright holder in this case are not significant. Indeed, the economic loss in this case is so insignificant that plaintiff did not seek to recover damages in its complaint. Had plaintiff sought to recover economic damages, the economic loss would have been insignificant. The statistics generated by Doe's website host indicate that forty-nine people clicked the link to the fourth edition of the Work while it was displayed on the Amthrax Blog.

At the time, the fourth edition retailed for $1.98 (Dkt. 54-8), and, assuming all forty-nine infringing views of that edition would have supplanted purchases of the Work, plaintiff would have caused $97.02 in damages. If, instead, the economic loss to plaintiff is lost purchases of the then current edition of the Work, which retailed for $23.95 (Dkt. 54-7), plaintiff's economic losses would have been $1,173.55. Either way, the amount of economic loss is quite small compared to the total revenue plaintiff has earned from selling more than 100,000 copies of the Work.

Third, the reach of the infringed version of the copyrighted material is narrow. As noted, the link to the infringed work appearing on Doe's website was clicked just forty-nine times. Few people viewed the infringing version of the work, especially when compared with the quantity of total sales of the Work.

Fourth, Doe has acted in good faith and without malicious intent throughout this litigation. This case arose when, on January 18, 2013, Doe posted a link on his blog to a PDF copy of the Work, nearly a month *before* plaintiff registered the copyright to the Work.[1] In other words,

---

[1] Plaintiff registered the copyright to the work on February 11, 2013. (Dkt. 1-1.)

plaintiff Doe complied with plaintiff's pre-litigation take-down notice,[2] and he destroyed all copies of the Work in his possession in March, 2013—six months before plaintiff filed its complaint. (Dkt. 58 at 2.)

In addition, the Court deemed it unnecessary to order ongoing injunctive relief in this case because Doe is unlikely to continue to infringe the Work. (Dkt. 63 at 4.) Though plaintiff points to other instances in which Doe posted its documents and images without permission as evidence of Doe's "propensity to infringe," the Court held at summary judgment that "[there] is no evidence that defendant has repeatedly ignored plaintiff's asserted rights[.]" (Dkt. 56 at 22.) Importantly, plaintiff has not at any point asserted a protectable copyright interest in those documents and images, and that conduct has not been adjudicated as infringing. Instead, the totality of Doe's conduct both before and during this litigation indicates a lack of bad intent.

Moreover, the public is significantly less interested in Doe's identity and the outcome of this lawsuit than it was in the sealed documents at

---

[2] Plaintiff argues that it took Doe two weeks to comply with the take-down notice, but this misconstrues the facts. Though the take-down notice was issued on February 8, 2013, Doe states in a sworn declaration that he did not learn of the notice until February 16, 2013. (Dkt. 58 at 2.) He removed the PDF from his website three days later.

8

the heart of *Shane Group Inc. v. Blue Cross Blue Shield of Michigan*. In that case, the Sixth Circuit overturned the district court's order sealing court records that were necessary for absent plaintiffs to evaluate the quality of an antitrust class action settlement. *Shane Grp., Inc.,* 825 F.3d at 306. That was "a case in which the public ha[d] a keen and legitimate interest," both because it was an antitrust action involving a company that controlled "60% of the commercial health-insurance market in Michigan" and involved a settlement that would bind absent class members. *Id.* at 302, 307. The absent class members had great interest in reviewing the sealed material to "assess for themselves the likelihood of success on their claims" so they could decide whether to opt out of the settlement. *Id.* at 309.

Here, the public has no similar interest in unsealing court records that keep Doe's identity private as this is not a case in which the public has a "keen and legitimate interest." *See id.* at 307. Rather, it concerns a small-time copyright infringer who posted the material before plaintiff registered the copyright and ceased the single infringing incident six months before plaintiff filed suit. Publicly revealing Doe's identity is not

9

likely to have any impact on any member of the public's rights, nor will it affect anyone's—including plaintiff's—litigating position.

In sum, although public disclosure of court records—including the identity of the parties—is necessary for "public confidence in and understanding of the judicial system," the public interest in Doe's identity in this copyright case is minimal. *See Signature Mgmt. Team*, 876 F.3d at 838. The public's interest in a copyright infringement case is limited when, as is the case here, the work at issue is an outdated "sparsely read instruction manual" as opposed to a "bestselling novel." *Id*. This is so because the reach of the Work and the infringed version of the Work is small, and the economic losses caused by the infringement are nominal. Additionally, the infringing party did not act with malicious intent. Accordingly, the public's interest in Doe's identity in this case is not strong.

b. <u>Plaintiff's Interest in Unmasking</u>

The "presumption in favor of disclosure is stronger or weaker depending on the plaintiff's need to unmask the defendant in order to enforce its rights." *Id*. This need is stronger where the court orders ongoing injunctive relief and weaker where the Doe defendant "has

willingly participated in the litigation and complied with all relief ordered." *Id.*

Plaintiff argues that it has a strong interest in unmasking Doe because it needs to monitor Doe's compliance with the judgment. This argument misunderstands the scope of the judgment.

Doe "has willingly participated in the litigation and complied with all relief ordered." *See id.* The Court previously granted summary judgment in favor of plaintiff on its copyright claims and issued "relief in the form of the destruction of all copies of the Work retained by Doe." (Dkt. 63 at 4.) Doe "documented to the Court's satisfaction that he has destroyed all copies of the Work that were in his possession," at which point he was in full compliance with the entirety of the relief ordered and "no further injunctive relief [was] necessary." (*Id.*)

There is no need to monitor compliance with the judgment because Doe has already complied in full with the judgment. Unlike in *Shane Group*, where the absent class plaintiffs needed to review the sealed settlement and expert reports to determine whether it was appropriate for them to opt-out of the settlement, here, learning the sealed information will have no effect on plaintiff's decision making. *See Shane*

*Grp.*, 825 F.3d at 309. Plaintiff was not granted a permanent injunction, and there is no ongoing relief for either plaintiff or the Court to monitor.

Because Doe has "complied with all relief ordered," plaintiff has "little need to unmask [] Doe[.]" *See Signature Mgmt. Team*, 876 F.3d at 837.

### c. Doe's Interest in Remaining Anonymous

A "Doe defendant may rebut the presumption of openness by showing that he engages in substantial protected speech that unmasking will chill." *Id.* at 838.

The Sixth Circuit found that "[a]lthough Doe's infringing speech is not entitled to First Amendment protection, that speech occurred in the context of anonymous blogging activities that are entitled to such protection." *Id.* at 839. Accordingly, an order unmasking Doe would be done "in connection with both protected and unprotected speech and might hinder his ability to engage in anonymous speech in the future." *Id.*

The Court held earlier in this action that Doe's speech on his blog is "commentary on a 'public issue,'" entitling him to a high level of First Amendment protection. (Dkt. 48 at 22.) The vast majority of Doe's speech

on his blog is of this type. Doe founded the blog in 2008, and the infringing link was active for barely more than a month. In fact, Doe took the infringing link off of his website within three days of learning of plaintiff's copyright concerns. Plaintiff then waited six months to file this suit. The infringing speech represents just one month in the nearly ten year lifespan of Doe's blog providing "commentary on a public issue." Thus, an order unmasking Doe would be primarily in connection with protected speech.

Given that an order unmasking Doe would do so mostly with respect to protected speech, the remaining question is whether an unmasking order would chill that protected speech. *See Signature Mgmt. Team*, 876 F.3d at 838.

Doe has a reasonable fear—grounded in part in the experience of another anti-MLM blogger—that unmasking him would chill his protected speech. For example, Brian MacFarland, a colleague of Doe's in the world of anti-MLM blogging, details in a declaration a years-long campaign of harassment and threats in retaliation for his criticisms of MLM companies (Dkt. 46), and specifically a company formerly promoted by plaintiff. (Dkt. 26 at 3.) Mr. MacFarland received anonymous

13

threatening emails warning him to stop criticizing MLMs so that his "loved ones and friends will remain unharmed and untouched," and was subjected to false, publicly made allegations that he had molested an eleven year old. (*Id.* at 8-9.) His home address was also published online. (*Id.* at 4.) Doe states he is aware of these threats made against Mr. Macfarland, and, because he publishes criticism substantially similar to that found on Mr. MacFarland's website, he has "no reason to believe that [his] own experience would be any different if [his] identity were disclosed." (Dkt. 45 at 6.) "[S]uch a result would chill . . . [his] criticisms of MLM companies[.]" (Dkt. 45 at 6.) The Court takes this fear seriously because unmasking Doe is an irreversible act.

In arguing that unmasking Doe would not chill his protected speech, plaintiff latches on to the idea that it does not matter if Doe is unmasked because he could create a new pseudonymous blog with the same content as Amthrax. This argument is beside the point because an order unmasking Doe would irreversibly reveal Doe's identity to the public, and the fact that he could start a new blog does not mean he would start a new blog. In fact, he states that he has "reduced [his] blogging substantially pending this lawsuit[.]" (Dkt. 45 at 6.)

14

For these reasons, Doe has a compelling interest in remaining anonymous because "he engages in substantial protected speech that unmasking will chill." *Signature Mgmt. Team*, 876 F.3d at 838.

　　d. The Dissent's Concerns

The majority of the Sixth Circuit panel directed the Court to evaluate "the concerns identified by the dissent [that] cut in favor of unmasking Doe[.]" *Signature Mgmt. Team*, 876 F.3d at 839. The dissent identified four concerns with keeping Doe's identity sealed: it "minimizes the effect of the court's order, downplays the significance to Doe, encourages future misconduct, and hinders Team's ability to monitor compliance." *Id.* at 840 (Suhrheinrich, J. dissenting).

The dissent's first and second concerns were that keeping Doe's identity sealed "minimizes the effect of the court's order [and] downplays the significance to Doe[.]" *Id.* at 840 (Suhrheinrich, J. dissenting). Plaintiff argues that keeping Doe anonymous will "exonerate Doe of all consequences" because he will be able to credibly say he has never had a judgment issued against him and he will retain a blueprint for future infringement. (Dkt. 93 at 23.)

15

Plaintiff is correct that there will be no public record of a judgment against Doe. But, such an argument ignores the other consequences that Doe suffered for his actions. Doe has been in litigation with plaintiff for more than five years, was sued in Michigan despite residing in California, and has presumably generated a considerable amount of legal fees. In addition, he was forced to destroy all copies of the Work in his possession. Such consequences are not insignificant. For these reasons, Doe will feel the effects of the judgment regardless of whether his identity is made public, and its significance will be clear.

The dissent's third concern is that keeping Doe anonymous encourages future misconduct. Anonymous blogging cases are somewhat unusual in that the Doe defendant can repeat the complained of misconduct regardless of whether his identity is made public. The public's knowledge of Doe's identity has no bearing on whether Doe could start another pseudonymous blog that hosts infringing materials.[3] Doe's anonymity has no effect on his ability to reoffend, and his conduct both before and during this litigation indicate that he will not reoffend.

---

[3] The fact that Doe could start a new, pseudonymous blog hosting infringing materials does not impact the analysis above concerning whether such activity is indicative of chilled speech.

Last, the dissent was concerned that keeping Doe anonymous would "hinder[] Team's ability to monitor compliance." *Id.* at 840 (Suhrheinrich, J. dissenting). As discussed above, there is no compliance for plaintiff to monitor in this case. Doe has already complied with the entirety of the Court ordered relief, and, aside from the appeal and remand, this case is over.

Accordingly, the concerns identified in the dissent do not warrant unmasking in this case.

   e. Conclusion

On balance, for the reasons set forth above, the factors the Sixth Circuit directed the Court to consider favor keeping Doe anonymous. Thus, Doe's articulated fear that if unmasked he would be subject to threats and harassment that would chill his protected speech is a sufficiently compelling reason to overcome the "presumption in favor of unmasking anonymous defendants when judgment has been entered for a plaintiff." *See Signature Mgmt.*, 876 F.3d at 837. This is especially so in a case where the public's interest is at its lowest, and plaintiff has achieved relief that cured all infringing activity.

17

Accordingly, Doe's motion to maintain the Court's protection of his anonymity (Dkt. 91) is GRANTED.

IT IS SO ORDERED.

Dated: August 21, 2018                 s/Judith E. Levy
Ann Arbor, Michigan                  JUDITH E. LEVY
                                               United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 21, 2018.

                                                   s/Shawna Burns
                                                   SHAWNA BURNS
                                                   Case Manager